IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lawrence H. Piotter, :
    Plaintiff : Civil Action 2:08-cv-00649

v. : Judge Holschuh

Michael J. Astrue, : Magistrate Judge Abel
Commissioner of Social Security,
    Defendant :

## REPORT AND RECOMMENDATION

Plaintiff Lawrence H. Piotter brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits and Supplement Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erroneously found that plaintiff did not have a severe mental impairment and improperly ignored the opinion of an examining medical professional;
- The administrative law judge failed to properly apply the medical expert's testimony;
- The administrative law judge failed to properly apply the vocational expert's testimony in determining that plaintiff was capable of his past work; and,
- The administrative law judge failed to find plaintiff disabled under the Medical-Vocational Guidelines.

**Procedural History.** Plaintiff Lawrence H. Piotter filed his applications for disability insurance benefits on July 6, 2004 and July 9, 2004, alleging that he became disabled on August 11, 2003, at age 56, by his neck and back, depression, memory loss, high blood pressure, and artery disease. (R. 64, 76.) The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On November 21, 2007, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 282.) A vocational expert and a medical advisor also testified. On March 25, 2008, the administrative law judge issued a decision finding that Piotter was not disabled within the meaning of the Act. (R. 15-23.) On May 30, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 4-6.)

**Age, Education, and Work Experience.** Lawrence H. Piotter was born April 20, 1947. (R. 52.) He has a high school education. (R. 80.) He has worked as a food service assistant and a surgical assistant. He last worked August 7, 2003. (R. 77.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Piotter's testimony as follows:

> The claimant testified that he experiences neck and low back pain, left arm and finger numbness, tingling legs and feet, and daily headaches. He said that he takes three medications for hypertension. He also related that he experiences depression and is a nervous person. He testified that he smokes one-half to two packs of cigarettes daily. He said that he had served time in prison as a sexual offender and was released in June 2000. He reported that he is five, six inches tall, and weighs 190 pounds.

2

(R. 17.) Plaintiff also testified that he experienced tightness in his back and right hip upon twisting, walking relatively short distances, or standing for more than 45 minutes. He could not sit for an hour at a time or for eight hours in a day because he needed to shift positions, stand, and take frequent restroom breaks because of an enlarged prostate. Piotter testified that he was a nervous person and that he regularly saw a social worker. He was depressed, fed up with life, and had attempted suicide a few times in the past. Piotter said that he no longer cooked like he used to, and he does not shower or care for his hygiene most days. He had not seen a movie since his wife died, and he only had a limited number of friends that he socialized with. His only activity was watching television. He did not believe that he could perform his past work as a cashier because he could not sit or stand for long periods of time. (R. 299-308.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

<u>Robert C. Woskobnick, D.O.</u> On October 19, 2004, Dr. Woskobnick evaluated Piotter at the request of the Bureau of Disability Determination. (R. 132-41.) Piotter complained of experiencing back and neck pain since the 1970s, which have resulted in stiffness, discomfort, and difficulty bending, stopping, lifting, standing or walking for any length of time. In August 1999, plaintiff had a myocardial infarction. (R. 132.) He also reported a history of mitral valve prolapse and hypertension. (R. 133.) X-rays

confirmed moderate degenerative disc disease in the cervical and lumbar spine. (R. 136.)

On examination, plaintiff exhibited a normal gait without the use of assistive devices. He had negative straight leg raising, normal motor strength, grasp, manipulation, and fine coordination. (R. 134, 138-41.) Dr. Woskobnick opined that Piotter was limited to performing a reduced range of sedentary work; he could stand and walk for 30 minutes at a time as long as he could rest for 30 minutes for up to eight hours a day. (R. 134.) He could sit for up to eight hours a day as long as he could get up for 15 minutes every two hours. He could intermittently lift up to 10 pounds in an eight hour day. (R. 135.) He could not climb, balance, stoop, crouch, kneel, or crawl, and he required environmental restrictions. (R. 135.)

<u>S. Oberlander, M.D.</u> On December 4, 2004, Dr. Oberlander, a state agency physician, reviewed the record and opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in a workday; sit for about 6 hours in a workday; push and pull within normal limits; manipulate with his hands and fingers normally; occasionally balance, stoop, knee, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (R. 148-55.) On April 27, 2005, Walter A. Holbrook, M.D., reviewed the record and affirmed Dr. Oberlander's assessment. (R. 155.)

**Psychological Impairments.**

Scott Lewsi Donaldson, Ph.D. On August 4, 2004, Dr. Donaldson, a psychologist, evaluated Piotter. (R. 142-47.) Piotter appeared intimidated and anxious about the process. When Dr. Donaldson inquired why he had applied for disability benefits, Piotter replied:

> I retired after twenty seven years and six months from Akron General Medical Center. I have injured my back numerous times. I have neck problems and get headaches. I have a heart condition and have had three catheterizations. I get winded easily and have chest pain. My wife died on December 16, 2001. My mind does not work anymore.

(R. 142.) On mental status examination, Piotter's affect was anxious and flat. His speech was normal, and he had no difficulty elaborating on responses. His mood was depressed and anxious. His level of psychomotor activity was slow. He reported being restless, easily fatigued, irritable, experiencing muscle tension, difficulty concentrating, and sleep disturbance. He was oriented in all spheres. His memory was limited with respect to past and recent events. (R. 143-45.) Piotter reported that his daily activities included cooking, going to the library, shopping for groceries, driving, and learning to use a computer. (R. 145.) He used public transportation to get to his appointment with Dr. Donaldson. (R. 142.) He reported getting along adequately with neighbors, clerks in stores, and people in public agencies. Piotter said he got along well with supervisors and co-workers. (R. 143.)

On WAIS-III testing, Piotter's intellectual abilities were in the average range. (R. 145.) Dr. Donaldson diagnosed mood disorder, not otherwise specified; anxiety

5

disorder, not otherwise specified; and bereavement. Dr. Donaldson assigned a Global Assessment of Functioning ("GAF") score 45-55. (R. 147.) Dr. Donaldson opined that Piotter's ability to understand, remember, and carry out one- or two-step jobs was not impaired. His ability to perform repetitive tasks might be moderately limited due to his medical problems, although his level of motivation could be lacking due to his mental impairments. His ability to attend to relevant stimuli was mildly impeded. His interpersonal relationship skills and his ability to relate to supervisors and co-workers was not limited. His ability to withstand the stress and pressures associated with day-to-day work activity appeared moderately limited. Dr. Donaldson recommended individual psychotherapy, a vocational rehabilitation program, and a pain management program. (R. 147.)

<u>Alice L. Chambly, Psy.D.</u> On December 30, 2004, Dr. Chambly, a state agency psychologist, reviewed the record and opined that Piotter had only mild limitations in his activities of daily living, social functioning, and in maintaining concentration, persistence, and pace. (R. 158-70.) Dr. Chambly found Piotter partially credible because there were allegations of significant memory limitations that were not supported by the record. Dr. Chambly noted that she gave controlling weight to the opinion of Dr. Donaldson because there were no treatment records in the file. (R. 170.) Dr. Chambly concluded that despite his depression and anxiety, Piotter did not appear to be more than mildly affected. (R. 158.) On April 21, 2005, Catherine A. Flynn, Psy.D. affirmed Dr. Chambly's opinion. (R. 158.)

6

Columbus Area, Inc. From November 2006 through November 2007, Piotter received outpatient mental health treatment from Columbus Area, Inc. (R. 293-236.) Plaintiff was prescribed medication for his depression. (R. 235.) July 2007 counseling notes indicated that Piotter was "socializing better with friends and possible dating relationship." (R. 226.) In September 2007, the notes indicate Piotter continued to work part-time. He maintained socialization by interacting with his god children and their family. (R. 219.)

Medical Expert Testimony. David Dunbar, M.D., an internist, testified at the hearing. He concluded that the following impairments were adequately supported in the record: osteoarthritis, degenerative disc disease of the cervical and lumbar spine, hypertension, an anxiety disorder, and a mood disorder. Dr. Dunbar testified that none of his impairments met or equaled any Listing.

Dr. Dunbar opined that plaintiff could sit at least one hour at a time for a total of eight hours. After sitting for an hour, Piotter would need to stand and stretch for about five minutes. Dr. Dunbar also testified that plaintiff would not require more than normal breaks and lunch. He could stand for one hour at a time for a total of six hours, and he could walk for 30 minutes at a time for a total of four hours. He could occasionally lift and carry 20 pounds and ten pounds frequently. He could perform simple grasping, fine manipulation, and pushing and pulling,. He could also operate foot controls and frequently reach above shoulder level. Piotter could occasionally bend, squat, climb stairs, kneel, crouch, and twist. Dr. Dunbar limited plaintiff's

7

exposure to unprotected heights and climbing ropes or ladders. He was also limited with respect to his ability to bend or extend his neck extensively.

With respect to plaintiff's mental impairments, Dr. Dunbar agreed with the conclusions reached by Dr. Donaldson.

<u>Vocational Expert Testimony</u>. At the hearing, William Kiger, Ph.D. testified as a vocational expert. Dr. Kiger testified that plaintiff's past work as a cashier/server was classified as light work and semi-skilled. Although his work as a surgical assistant was classified as light and skilled, Piiotter performed it at the heavy level.

Dr. Kiger testified that plaintiff could perform his past work as a cashier/server if the limitations described by Drs. Oberlander and Dunbar were adopted. If, however, the limitations described by Dr. Woskobnick were adopted, plaintiff could not perform any of his past work because he would be limited to sedentary work.

Assuming an individual of advanced age or closely approaching retirement age, with a high school education and past work as described by plaintiff, with the limitations identified by Dr. Oberlander, the vocational expert testified that aside from his past work as a cashier, there would be about 18,000 additional light jobs, including packer, machine operator, and counter clerk. Those jobs would still be available if the same individual was limited as described by Dr. Dunbar. If plaintiff's testimony were accepted, there would be no jobs at either the light or sedentary level that he would be capable of performing. If the limitations identified by Dr. Woskobnick were adopted, plaintiff would be limited to sedentary work.

8

In response to questions from plaintiff's attorney, Dr. Kiger testified that if the limitations identified by Dr. Donaldson were added to those of Dr. Oberlander, plaintiff could not perform any of his past work, although he could still perform other light jobs. Dr. Kiger also testified that if plaintiff were off task for 40 minutes (5 minutes for each hour in an eight-hour day), he would require an accommodation be made on the part of his employer.

### **Administrative Law Judge's Findings.**

1. The claimant met the disability insured-status requirements of the Act on August 11, 2003, his alleged disability onset date, and he continues to meet them through December 2007.

2. Based on the claimant's earnings record and his testimony, the claimant has not engaged insubstantial gainful activity since his alleged disability onset date.

3. Based on the objective medical evidence, the claimant has the following impairments that reduce his ability to perform basic work-related functions: degenerative disc disease of his cervical and lumbar spine, coronary artery disease/ischemia, mitral valve prolapse, and hypertension.

4. Based on the medical evidence of record, the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in, 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant's subjective complaints are disproportionate with and not supported by the objective and substantial evidence in the record to the extent they suggest that the claimant is disabled.

6. The claimant has the residual functional capacity to perform light exertional work, subject to the following restrictions: (1) no lifting and/or carrying of greater than 20 pounds occasionally or 10 pounds frequently; (2) no standing for longer than one hour at a

> time or six hours total in a workday; (3) no walking for longer than 30 minutes at a time or four hours total in a workday; (4) no more than occasional bending, squatting, or climbing; and (5) no more than frequent (i.e., no constant) reaching above shoulder level.
>
> 7. Based on the medical evidence of record, the claimant retains the residual functional capacity to perform his past relevant work as a cashier/server (light exertion, semiskilled).
>
> 8. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(R. 21-22.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge erroneously found that plaintiff did not have a severe mental impairment and improperly ignored the opinion of an examining medical professional</u>. Plaintiff argues that more weight is given to the source who has examined the claimant than to the opinion of a source who never examined him. Plaintiff also argues that Dr. Chambly's assessment is inconsistent with her statement that the psychological consultative examination was given controlling weight.

- <u>The administrative law judge failed to properly apply the medical expert's testimony</u>. Plaintiff contends that the administrative law judge ignored two aspects of the medical expert's testimony. The medical expert indicated that plaintiff could only stand or sit for an hour at a time and that he would need to be able get up and stretch for about five minutes. Dr. Dunbar also testified that he agreed with the conclusions of Dr. Donaldson, which were more restrictive than found by the administrative law judge. The administrative law judge concluded that plaintiff did not have a severe mental impairment.

- <u>The administrative law judge failed to properly apply the vocational expert's testimony in determining that plaintiff was capable of his past work</u>. Plaintiff argues that the administrative law judge ignored the

11

testimony of the vocational expert. The vocational expert testified that requiring a five minute break for every hour would require some accommodation by the employer. The administrative law judge failed to address the need for a special accommodation in light of plaintiff's need for breaks. Plaintiff also argues that the administrative law judge failed to properly determine the severity of plaintiff's mental impairments and ignored testimony concerning his residual functional capacity. As a result, the administrative law judge posed an incomplete hypothetical to the vocational expert. Had the administrative law judge posed a complete hypothetical, which properly applied the medical expert's testimony and the objective medical evidence, the vocational expert would have testified that plaintiff was not able to perform his past work.

- <u>The administrative law judge failed to find plaintiff disabled under the Medical-Vocational Guidelines</u>. Had the administrative law judge reached the proper conclusion at step four, i.e., that plaintiff was not capable of performing his past work, the administrative law judge would have found him presumptively disabled at step five of the evaluation under the Medical-Vocational Guidelines. The administrative law judge determined that plaintiff was capable of light work with limitations. According to Rule 202.06 of Table 2, plaintiff is disabled.

**Analysis.**

The procedure for determining whether a mental impairment is severe is set forth at 20 C.F.R. § 404.1520a. The regulation identifies four broad functional areas in which the degree of functional limitations are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three functional areas is assessed using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). For episodes of decompensation, a four-point scale is used: none, one or two, three, four or more. *Id.* Section 404.1520a(d)(1) states:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

20 C.F.R. § 404.1520a(d)(1).

The administrative law judge concluded that Piotter did not have a mental impairment:

> [C]onsistent with the following summary of the medical evidence, the claimant does not have a severe mental impairment. In November 2004, Scott Lewis Donaldson, Ph.D., a psychologist, evaluated the claimant and diagnosed a mood disorder NOS (not otherwise specified), an anxiety disorder NOS, and bereavement (Exhibit 3F). Dr. Donaldson suggested that the claimant had at best a moderately impaired ability to perform repetitive tasks and withstand work stress and pressure, but Dr. Donaldson's narrative findings do not support this assessment. Specifically, according to Dr. Donaldson, the claimant attained a verbal intelligence quotient (IQ) of 87, a performance IQ of 98, and a full-scale IQ of 91, consistent with average functioning. Dr. Donaldson observed that

the claimant was appropriately dressed, adequately groomed, alert, fully oriented, and aware. The claimant reported that he had gotten along well with supervisors and coworkers. There was no evidence of compulsiveness, impulsiveness, flights of ideas, loose associations, mania, active suicidal ideation, feelings of guilt, inflated self-esteem anhedonia, decreased energy level, panic attacks, paranoid ideation, delusions, hallucinations, or confusion. Dr. Donaldson noted that there was only mild psychomotor slowing. Dr. Donaldson reported that the claimant exhibited sufficient judgment to make important decisions affecting his future and to conduct his own living arrangements. He reported that he cooked, enjoyed going to the library, maintained friendships, grocery shopped, drove a car daily, made attempts to work, lived alone, and had been learning to use a computer.

> The evidence shows that the claimant has received some outpatient mental health treatment (Exhibits 8F, 9F, 11F), but a May 2007 outpatient counseling note indicates that the claimant had strengths described as a "job, cat, puzzles, etc." (Exhibit 9F, p. 16). In July 2007, a counseling note indicates that he was "socializing better with friends and possible dating relationship" (Exhibit 9F, p. 10). The claimant testified that he checks identification at a cocktail bar for four hours a night, three days a week.

> The summarized mental health evidence supports the assessment of Alice Chambly, Psy.D., a state of Ohio Bureau of Disability Determination (BDD) psychologist who reviewed the record and opined that the claimant's mental symptomatology caused "mild" limitation in activities of daily living, a "mild" limitation in social functioning, and a "mild" limitation with respect to concentration, persistence or pace (Exhibit 6F, p. 11). There is "no" evidence whatsoever of extended episodes of decompensation. Dr. Chambly pointed out that the evidence reveals that the claimant has been able to get along well with others, has no abnormal speech or thought processes, and is able to care for his own personal hygiene and activities of daily living with little or no help (Exhibit 6F, p. 13). Further, the claimant's allegations of impaired memory are not consistent with the medical evidence of record. In April 2004, Catherine Flynn, Psy.D, a BDD psychologist, reviewed an updated record related to the claimant's mental condition and affirmed Dr. Chambly's assessment (Exhibit 6F, p. 1.)

(R. 18.)

The administrative law judge's conclusion that Piotter's mental impairments were not severe is supported by the assessment of Dr. Chambly. Dr. Chambly found only mild limitations with respect to activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. Dr. Chambly's opinion constitutes substantial evidence.

Plaintiff also argues that the administrative law judge ignored two aspects of the medical expert's opinion. Dr. Dunbar testified that plaintiff would only be able to stand or sit for an hour at a time and that he would need to be able to get up and stretch for approximately five minutes. Plaintiff's counsel characterized this limitation as requiring plaintiff to be off-task for five minutes of every hour in an eight-hour day. The vocational expert testified that if plaintiff were off-task for 40 minutes, he would require an accommodation on the part of his employer. This characterization of Dr. Dunbar's testimony is not consistent with his remaining testimony that indicated that plaintiff would not require more than the routine breaks and lunch break typically permitted. Dr. Dunbar did not describe plaintiff as being off-task; instead, plaintiff could remain on task. He would simply need to stand for five minutes in each hour.

Plaintiff also argues that the administrative law judge erred when he failed to accept Dr. Dunbar's testimony that he agreed with the opinion of Dr. Donaldson concerning plaintiff's mental limitations. The Commissioner correctly notes that Dr. Dunbar is an internist, not a mental health specialist. The administrative law judge gave

15

good reasons for rejecting the opinion of Dr. Donaldson, and his conclusion was supported by substantial evidence based on Dr. Chambly's opinion.

Plaintiff argues that the administrative law judge failed to properly apply the vocational expert's testimony in determining that plaintiff was capable of his past work. In determining whether a claimant is disabled, an administrative law judge makes a residual functional capacity determination. That finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account. 20 C.F.R. § 416.945. It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].' *Varley,* 820 F.2d at 779; *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975) (per curiam)." *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).

When a vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities. The facts in this hypothetical are the administrative law judge's residual functional capacity findings. The administrative law judge must accurately state each limitation that affects the claimant's ability to work. If there is not substantial evidence supporting the limitations the administrative law judge includes in the hypothetical to the vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits. *Howard,* 276 F.3d at 240-42. If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is

error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge. 276 F.3d at 242.

The administrative law judge concluded that Piotter had the residual functional capacity to perform light exertional work, subject to the following restrictions: (1) no lifting and/or carrying of greater than 20 pounds occasionally or 10 pounds frequently; (2) no standing for longer than one hour at a time or six hours total in a workday; (3) no walking for longer than 30 minutes at a time or four hours total in a workday; (4) no more than occasional bending, squatting, or climbing; and (5) no more than frequent (i.e., no constant) reaching above shoulder level. These findings are supported by the opinion of Dr. Dunbar. Based on this residual functional capacity, the vocational expert testified that plaintiff could perform his past work as a cashier.

Because the administrative law judge determined that plaintiff could perform his past work, he did not have to proceed to step five of the sequential evaluation.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in

question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel  
United States Magistrate Judge
